UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------x
LIZVETTE MELENDEZ,

                    Plaintiff,

    -against-

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                    Defendant.

-----------------------------------------------x

**MEMORANDUM AND ORDER**

Case No. 1: 17-cv-6638-FB

*Appearances*:
*For the Plaintiff*:
HOWARD D. OLINSKY, ESQ.
Olinsky Law Group
300 South State Street, Suite 420
Syracuse, New York 13202

*For the Defendant*:
RICHARD P. DONOGHUE, ESQ.
United States Attorney
Eastern District of New York
By: MATTHEW SILVERMAN, ESQ.
Assistant United States Attorney
271 Cadman Plaza East, 7th Floor
Brooklyn, New York 11201

**BLOCK, Senior District Judge:**

Lizvette Melendez seeks review of the final decision of the Acting
Commissioner of Social Security ("Commissioner") denying her application for
disability insurance benefits ("DIB"). Both parties move for judgment on the
pleadings, with Melendez requesting that the Court vacate the administrative law
judge's ("ALJ") decision and remand the case for additional administrative

1

proceedings. For the reasons stated below, Melendez's motion is granted, the Commissioner's motion is denied, and the case is remanded for reevaluation of Melendez's residual functional capacity ("RFC").

I

### A. Procedural Background

Melendez, a former assistant retail manager and sales clerk, filed for DIB on October 5, 2013. She alleged that she became disabled on December 7, 2010, following a workplace accident in which she injured her lower back. Her application was denied, and she requested a hearing before an ALJ. After two hearings, ALJ Margaret A. Donaghy ruled on August 31, 2016, that Melendez was not disabled. Applying the familiar five-step evaluation process,[1] the ALJ determined that (1) Melendez had not engaged in any substantial gainful activity from December 7, 2010

---

[1] Social Security Administration regulations establish a five-step process for evaluating disability claims. The Commissioner must find that a claimant is disabled if she determines

> (1) that the claimant is not working, (2) that [s]he has a 'severe impairment,' (3) that the impairment is not one that conclusively requires a determination of disability, . . . (4) that the claimant is not capable of continuing in [her] prior type of work, [and] (5) there is not another type of work the claimant can do.

See *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002) (citing 20 C.F.R. § 404.1520(b)–(f)). The burden of proof is on the claimant for the first four steps, but it shifts to the Commissioner at the fifth step. *See* 20 C.F.R. § 404.1560(c)(2); *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000).

2

through December 31, 2015; (2) Melendez's dorsalgia, epilepsy, lumbosacral radiculopathy, and cervical herniation were severe impairments; but (3) Melendez's impairments did not meet the severity of any presumptively disabling impairments. The ALJ determined that Melendez had the RFC to perform light work, except that: "the claimant can occasionally climb, balance, stoop, kneel, crouch, and crawl. The claimant can lift/carry ten pounds frequently and twenty pounds occasionally. The claimant can sit for six hours and stand/walk for six hours in an eight hour workday. The claimant must avoid unprotected heights and hazards." Applying this RFC, the ALJ determined that (4) Melendez was able to perform past relevant work as an assistant retail manager and sales clerk. The ALJ, therefore, concluded that Melendez was not disabled during the relevant period, without reaching the fifth step. The Appeals Council declined review on September 14, 2017. Melendez timely sought judicial review.

### B. Medical Source Evidence

The record contains varied, conflicting opinions from many sources. Three sources—treating physician Wael Kamel, examining physician Alexandre B. deMoura, and treating chiropractor Brian A. Aberger[2]—opined that Melendez was

---

[2] As the ALJ noted in her decision, chiropractors are not acceptable medical sources. Their opinions, therefore, are entitled to less weight. *See Diaz v. Shalala*,

unable to work. Three sources—examining physician Howard Levin, examining physician Anna N. Krol, and examining chiropractor Jeffrey C. Ritholtz—opined that Melendez was able to work with some limitations in lifting or prolonged walking. Several other doctors, including treating physician July Gaysynsky and treating physician Ian Stein, provided treatment notes regarding the status of Melendez's back pain and epilepsy but did not opine as to her limitations. Only one source, Dr. Aberger, gave specific estimations for how long Melendez could sit, stand, and walk in a workday, noting that she could sit for two hours and stand/walk for two hours in an eight-hour workday. Examining physician Chaim Shtock[3] also opined that she had several mild or moderate limitations in many tasks, including lifting, walking, squatting, standing, and sitting, though he did not specify how many hours a day Melendez could do those tasks. None of these sources testified at either of Melendez's hearings, instead submitting treatment or examining notes.

59 F.3d 307, 313–14 (2d Cir. 1995). Accordingly, the Court does not address in detail Melendez's argument that the ALJ erred in not affording Dr. Aberger's opinion more weight.

[3] The Court also does not address in detail Melendez's argument that the ALJ erred in not giving Dr. Shtock's opinion more weight. Because he did was merely an examining physician, the ALJ was not required to give his opinions controlling weight or provide particularly good reasons for failing to do so.

## II

"In reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004); *see also* 42 U.S.C. § 405(g). "Substantial evidence . . . means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation marks and alterations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). If contradictions appear in the record and an ALJ fails to reasonably explain why he or she opted for one interpretation over another, the Commissioner's findings cannot stand. *See, e.g.*, *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998).

### A. The Treating Physician Rule

The treating physician rule dictates that "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(c)(2)). If the ALJ does not give a treating physician's opinion controlling weight, he or she must provide "good reasons for the weight

given to that opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004) (internal quotation marks omitted). When ALJs have not provided good reasons, reviewing courts "do not hesitate to remand." *Id.* at 33.

"The ALJ is not permitted to substitute his [or her] own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015). Further, "[i]f an ALJ perceives inconsistencies in a treating physician's reports, the ALJ bears an affirmative duty to seek out more information from the treating physician and to develop the administrative record accordingly." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *Hartnett v. Apfel,* 21 F.Supp.2d 217, 221 (E.D.N.Y.1998)). However, an ALJ need not give controlling weight to a treating physician's opinion on issues reserved to the Commissioner, such as a claimant's RFC or ability to work. 20 C.F.R. § 404.1527(d)(2)–(3).

Here, the ALJ failed to give controlling weight to Melendez's treating physicians' medical opinions regarding her pain. First, Dr. Kamel opined that she could not return to work because she continued to have severe back pain. Though the ALJ did not need to give controlling weight to his opinion that Melendez was unable to work, the ALJ was required to give controlling weight to his opinion that Melendez's back pain was severe, unless she provided good reasons. Instead, the

ALJ stated that she gave Dr. Kamel's opinion little weight because "it is not supported by the record, including Dr. Kamel's examination findings." AR 23. In a case where half the medical sources opined that Melendez was not able to work while the other half opined that she was able to work, that vague explanation does not constitute a good reason not to give more weight to a treating physician's opinion. Further, if the ALJ believed that there were inconsistencies in Dr. Kamel's treatment notes, she had an affirmative duty to seek more information from him.

The ALJ similarly erred by not give controlling weight to Dr. Gaysynsky's and Dr. Stein's medical opinions, albeit implicitly. Both of those treating physicians stated in their treatment notes, at various times during the relevant time period, that Melendez suffered from back pain. Though the ALJ acknowledged in her decision that Melendez experienced back pain, she then undercut that conclusion and substituted her own view of the evidence. The ALJ discredited the back pain that Melendez experienced in part because she had examinations that involved normal musculoskeletal exams, full muscle strength, and normal gait.[4] But no doctor—

---

[4] The ALJ also relied on the fact that Melendez had not sought significant treatment for her back pain. But the fact that Melendez did not receive an epidural steroid injection because her insurance would not cover it and she was afraid does not negate the fact that several doctors prescribed her epidurals for pain.

treating physician or otherwise—stated that those results are inconsistent with debilitating back pain.

Because the ALJ explicitly and implicitly ignored the medical opinions of Melendez's treating physicians and substituted her own expertise, the Court must remand this case.

## B. RFC Unsupported by Substantial Evidence

To satisfy its burden of proof, the Commissioner must produce affirmative evidence demonstrating a claimant's ability to meet the demands of the claimant's work, such as light work. A claimant can do light work if he or she can lift up to twenty pounds, with frequent lifting of ten pounds, can do a "good deal of walking or standing," and can sit with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567. Further, the claimant must be able to stand or walk "for a total of approximately six hours of an eight-hour workday." *Latham v. Heckler*, 635 F. Supp. 378, 380 (E.D.N.Y. 1986). Therefore, in assessing a claimant's RFC, an ALJ should rely on specific medical evidence regarding the claimant's ability to lift, walk, stand, and sit. *See Beckles v. Barnhart*, 340 F. Supp. 2d 285, 290 (E.D.N.Y. 2004) (noting that "non-treating physicians who examined plaintiff did not specifically measure his ability to walk, sit, stand, carry, or lift" in concluding that the Commissioner had not sustained her burden of proving that plaintiff could

perform sedentary work); *Hiciano v. Massanari*, No. 97 CIV. 4037 (DLC), 2001 WL 1230524, at *6 (S.D.N.Y. Oct. 16, 2001). For example, substantial evidence did not support the ALJ's determination in *Hiciano* that the claimant could perform sedentary work because a consultative doctor stated only generally that the claimant could "hear, speak, sit, stand, bend, walk, reach, lift and carry." 2001 WL 1230524, at *6.

Here, the ALJ's RFC is not supported by specific medical evidence showing that she could sit, stand, or walk for the periods of time the ALJ concluded she could. Though several sources stated generally that she could return to work, they did not specifically opine that she could walk, sit, or stand for the required periods of time.[5] That is fatal here, because—similar to the lack of specific opinions regarding the claimant's ability to perform sedentary work in *Hiciano*—there is no medical evidence in the record that Melendez could sit for six hours in a workday or stand/walk for six hours in a workday, as the RFC states she can. In fact, the *only* source to specify how long she could do those activities was Dr. Aberger, her

---

[5] Even those medical sources that stated that she could return to work included limitations that would preclude light work. Dr. Krol stated that she had limitations in prolonged walking and Dr. Levin stated that she could lift only ten pounds. Though Dr. Ritholtz, a consultative chiropractor, opined that she could return to work and lift up to twenty pounds, he is not a medical source, and it makes little sense to give more weight to that opinion than to Dr. Aberger's RFC assessment.

longtime chiropractor, who stated that she was able to sit for only two hours in a workday and stand/walk for two hours.[6] Despite the abundant medical evidence, the record lacks RFC assessments containing specific conclusions supporting the conclusion that Melendez was able to perform the requirements of light work. The Court therefore remands for further development of the record.

## C. Remand

Considering the above deficiencies in the ALJ's RFC assessment, the Court remands this case for further development of the record and reconsideration of the RFC in light of that evidence. The ALJ should: (1) seek more information from Dr. Kamel regarding the supposed inconsistencies in his treatment and examination notes; (2) obtain medical opinions regarding whether Melendez's alleged pain is inconsistent with examination results such as normal musculoskeletal exams, full muscle strength, and normal gait; (3) reconsider the weight given to the opinions of Dr. Kamel, Dr. Gaysynsky, and Dr. Stein and, if necessary, provide good reasons for not giving them controlling weight; (4) as needed, obtain additional, specific testimony and medical opinions regarding Melendez's RFC, particularly about how

---

[6] As mentioned above, Dr. Shtock also state that Melendez had limitations regarding those activities, but he did not give specific approximations of how many hours in a workday she could do them.

long she could sit, stand, and walk in an eight-hour work day; and (5) conduct an additional hearing receiving and considering this new evidence. In so doing, the ALJ should be mindful that any testimony and medical opinions must be retrospective and address the period between December 7, 2010, and December 31, 2015.

### III

Melendez's motion is GRANTED, and the case is remanded for further proceedings consistent with this opinion.

**SO ORDERED.**

/S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
April 16, 2019